Good morning, your honors. May it please the court. John Lanihan on behalf of Mr. Franco, the appellant. Your honor, this case involves the search of a locked private bedroom by the occupant of a house whose brother was on a fourth waiver in state court. The brother was on probation for a nonviolent crime. My client was there. He had actually had a prior record but was not on probation or parole. His brother, who also had a prior record, was also not on probation or parole. They were in the house. During the search of this, my client actually was outside the entire time. And when the search of this house happened, ultimately after about 30 minutes, without my client's consent, agents, and this was a probation search, was meant to be considered a fourth waiver. I think we're pretty familiar with the facts, so I want to start asking some questions. Okay, go ahead. Why wasn't it enough here for the officers to fear for their safety and to need to clear all the rooms, given that the officers knew that the Franco brothers had prior violent convictions, found guns and drug paraphernalia in the home during that sweep, and had previously been allegedly misled that when they went there that a brother was not home, when in fact he was home on a prior occasion? Well, all of that information happened. The last time that happened was in 2011. This is now 2015. The two persons who had any kind of prior felony convictions or violent crimes, including, well, actually my client did not have any violent convictions. His brother did, though. They were out front. This was before they actually went into the locked bedroom. The rest of the house and the area had been searched. And it wasn't even important, actually, for the one who was actually on probation or parole to even be in the house. And in fact, during that period of time, he was supposed to, and in fact later that day did, surrender to serve weekends. But essentially what Your Honor, I think, is asking is, this is essentially, why doesn't this fall within Maryland v. Bowie? And Maryland v. Bowie is an exception to the Fourth Amendment. It is assumed that if it is without a warrant, and in this case it would not be justified as a basis for the fourth waiver for the brother, it has to fall within what would be the exception of Maryland v. Bowie. Maryland v. Bowie starts off as a search incident to an arrest. There was no arrest in this case. So that part of that exception is not there. It is also supposed to be a brief and cursory search. This is after 30 minutes. So that exception isn't there. And in fact, the government cites one case that's called U.S. v. Pow Pow, where this court said there is no particular time limit. But if you actually look at the facts of that case, that was a search of a room that took place for approximately one minute. And in that search, they overturned a sofa in a room where there were other people whom they believed were violent. Did you say 30 or was it 13 minutes? Well, initially they said they started that they were outside, and it was 13 minutes when he didn't give consent. But they said that the actual rest of the house was searched by 30 minutes, and that's when they wanted to go in and went into the room. So we're now dealing with, and there's more in Maryland v. Bowie. Before you go further into that case, you're not disputing that they had a right to be there, right? Well, actually. Or are you saying no? Well, actually, under Lara, they don't under Federal law. Actually, under Lara. The waiver in the probation, they were allowed to go in and search somebody who's on supervision. You're not denying that. I'm not denying that, but the reasonableness of the search. Well, if this were over in state court, this would be different. Well, we're not there. We're not. We're actually in Federal court. Under Lara. Yes. And so actually at that point, under Lara, the unannounced. Yes, under Lara it is unreasonable for them to be there for a search incident, for a search fourth waiver for a nonviolent offense. Under Lara, that's what this court has held. And it reaffirmed in Job or Joe, whatever you want to call it, that in fact being on possession. I'm sorry to interrupt, but you're going to have to shorten your answers because we've got a little time and we have some more questions. Okay. Well, the answer is it would be unreasonable under Federal law. So your position is they didn't have any right to be there in the first instance. They had no right to search my client's locked bedroom. That's not what I asked. I asked the home where there were cohabitants and where one of them had waived a proper warrant to come in and check. It was okay for them to be there, yes? Well, actually, I think under Federal law, no. But the only reason I'm saying that is because that's the analysis that's done in Lara. Is your real gripe here that if the bedroom was locked and therefore they knew that was a separate area that was not shared by the probationer or the person on supervised release, didn't have the permission to go in there, didn't have a warrant, therefore shouldn't have gone in? Correct. Does it make a difference if the room is not locked? No, because my client at that point had said it's my room and you don't have permission to go there. And what do they do when you've got somebody on supervision who is sharing a place with people who have a violent record? How do the police react to that situation? What do you think they should have done if they suspected that in that locked room, and do we know whether Claudia would have a key to that room or have access to that room or have hidden things in that room? What should the officers have done? Give me that answer. Okay, there are two things. They could have seen whether or not he had actually surrendered himself by that point because he was supposed to do so. So that would explain why he isn't there. The other basis is that they could have staked it out or they could have tried to consider that it would be some basis and make an application for it. I don't think there would have been a basis to say to search a room because we think somebody might be there. So there could have been some other way to do it. But also for their concern for their safety, if they're trying to enter, and this is for their safety, trying to enter a locked room where somebody is waiting, it's pretty obvious they're going to try and get in. This isn't a brief and cursory sweep. I mean, the reason I'm so ---- Is it your position that there should be no type of sweep or search that is permissible when the officers come in and are conducting a probation search like this one? I don't think it falls within Maryland v. Bowie. Correct. I don't think that that exception to the Fourth Amendment, which says it has to be part of a search, for a violent crime and has to be brief and cursory, none of which was filled ---- none of which filled any of those check boxes would apply. In other words, so ---- Now, I mean, to answer Your Honor's question, I think under State law it probably would have been considered reasonable. Right? So let's ---- And they would have had a right to be there. I'm really not arguing at this point that this was an unreasonable thing. I'm not really arguing or really caring about, at this point, the terms of Claudio's search condition. What I am saying is, though, that this went beyond what was the permissible scope of that search and the exception that was given for that, which is a protective sweep, which is a Fourth Amendment exception, was not filled. I mean, there have to be carefully delineated Fourth Amendment exceptions. And if it's not brief or cursory, it's not for a violent offense, and it's not instant to an arrest, three of those check boxes aren't filled. So ---- Counsel, Judge Gould, if I could ask you this question on that. Of course. Do we have Ninth Circuit precedent that goes beyond those features of buoy in saying what can be the scope of a protective sweep? Well, as far as I can tell, this Court has said that under Hoyos, which preexisted buoy, that they essentially overlap. But I don't think ---- I mean, when I tried to look and see what were exactly the delineations of this Court talking about the scope of buoy, it was hard for me to find them. I was one where somebody said, yes, sometimes it applies and sometimes it doesn't. But I think, at least as far as I could see from the Ninth Circuit, that basically you were following the contours of buoy because that is the exception that's set out by the Supreme Court. Can I deal with ---- I just want to deal with two other issues. First of all, good faith. Government didn't argue at trial it's waived. I don't think it applies. The issue here is not whether or not they were reasonably relying on the Fourth Weber condition. The question is whether or not they then went beyond that and used the exception of buoy, which is not something discovered by good faith. The other is inevitable discovery. Again, that was not argued before the District Court. That is now waived, I think, before this Court. But the issue was what they found were guns in another area that was not related to Pedro Franco. It was his parents. And there were, I think, methamphetamine pipe that was found in a common area of the garage. But if you look at the application, which actually is for what's in this case, it was an application to say why do we need to go and search this safe, which is found in a closet in someone's private bedroom. And that was the basis on which that particular warrant and this evidence was seized. And, therefore, that's why it's bad. Did the parents give consent? Did the parents give consent? I don't know. That never became an issue. But as far as I can ---- I mean, I have to say from looking at the tape of the search, they weren't happy about the search at all. But I don't think they gave consent for it. Thank you. Okay. Thank you. May it please the Court. Benjamin Hawley for the United States. Beginning with the protective sweep and the buoy factors, it seems everyone agrees that this was limited in the sense of they were only looking where someone could hide, where there could be a person, one of the buoy factors. So then we look at the reasonable suspicion and reasonable articulable suspicion that there were people there, could be there, and that it was cursory. On that first point, the officers here pointed to several ---- Well, this was a search incident to a probationary search, right? I mean, this wasn't a search incident to arrest. That's correct. Okay. Go ahead. That's correct. And it's not ---- Isn't it unusual for a probation inspection where the probation person has waived to have, was it 10 to 12 people come and execute a search on somebody who had a nonviolent record? It sort of smells at the outset, doesn't it? The issue here is because those officers, or at least officers, had been to this house multiple times before, sometimes for Claudio, sometimes for the other brothers. So they had a history of this house and knew that it was potentially more dangerous than just an average house of an average probationer because these brothers have a lot of criminal history. It seems like they were very familiar with them. And so I'm just curious. I mean, apparently Claudio was turning himself in to, you know, serve his weekend time. So for all the effort that they went to, it just seems suspect that they didn't know that and perhaps to use as pretext why they were looking for Claudio. So two responses to that, one factual and one legal. Factually, Claudio was unaccounted for at the time of the search, which was about 4.30 in the afternoon. He turned himself in to the jail three hours later at 7.30. So it wasn't known where he was. Well, what time was he supposed to turn himself in? That's not clear from the record. My inference from the record is that this is one of those you do a 48-hour weekend sentence. So if you turn yourself in Friday at 7, you get out Sunday at 7. If you turn yourself in Friday at 8, you get out Sunday at 8. So there wasn't necessarily a particular time. But, again, that's my inference from the record. I don't want to kind of oversell that. But his conviction for nonviolent felony, correct? The one that he was on probation for, yes, was a drug possession, a methamphetamine possession. Okay. And the second point as to the optics, I guess, the pretext. And no one called him, I take it? To Claudio? Yeah. Not that I know of, no. And did the reason why, I'm sorry, coming back to this, that they had so many officers there is because of where he was living and the people he was living with as opposed to him, himself, and his record? So the record doesn't go into detail about specifically why they selected that many people. No. But, again, it's because they've had a history with several of these brothers, two of whom were there, documented gang members. So your answer to my question is yes, it was the other factors that led to? It was their totality. It was their totality. And, again, on the pretext, the legal point is this Court has made clear in Nice and then reaffirmed in Stokes that even if it were pretextual, and I'm not conceding that, but even if it were pretextual, that is irrelevant for this analysis. Wait a minute. Okay. So you can, law enforcement can say, okay, we have the probationary person here, and so that's all we need to really go search for the other two violent brothers or what we perceive to be violent offenders, and we can do whatever we want as long as we have the nonviolent probationary? I wouldn't say we can do whatever we want. So in Nice. We can use that to go and look at that house for everybody for whatever we want. That's okay. They can search Claudio's place of residence. Well, and that's where we're getting to, but what's the scope of the search? It's to his place of residence. I'm not arguing. Are you arguing that that can be used as a pretext, the search of Claudio, to search an entire house wherever he may be living? And locked doors, too bad, and if he never has access to a place, that's too bad. So, no. Our argument as to getting into Pedro Franco's room specifically was the protective sweep aspect of it, not necessarily that the fourth waiver got them there. So you agree that the scope of a probationary search is confined to where Claudio would be? Yes, or where he'd have his belongings, so not necessarily that he would. Okay, so in this case would have been his room and arguably maybe the common areas of the house. Definitely the common areas and his room. So our argument to kind of separate it out, they were legally there in the house because of the fourth waiver. To get into Pedro Franco's room was based on the protective sweep, and that's to protect them while they're otherwise conducting the search that they're legally doing. The 10 or 12 police officers who came armed with guns? I assume so, yes. You assume so or you know so? I did not specifically check that they all had weapons, but I'm sure that's correct. Okay, go ahead. And was that 30 or 30, 13 minutes later that they went, or how much later did they go into Franco's room? Because you agree that a sweep is supposed to be done, it's supposed to be cursory and done quickly. Yes, as quickly as possible, and here they did do that as quickly as possible. How much time did it take? So I point to page 54 of the record where it looks like defense counsel says 13 1⁄2 minutes. That's my reading of the record, that they start the search, realize it's locked, and then Pedro Franco gives them the key. And we're obviously not arguing consent. He didn't do so willingly, but he gave them the key. And so sometime after 13-some minutes, they then enter the room, at that point do a very cursory search again, and then freeze the search. But had they had already gone into Claudio's room? Yes, they had already been into Claudio's room. So why were they hanging around? I mean, if they'd gone into Claudio's room, they'd already gone into the parents' room, and they'd gone into the common areas, why were they hanging around? Claudio, as part of that, can you answer whether Claudio was observed at the time when they went into Pedro's room? No, they did not know where Claudio was, and he, again, checked into jail three hours later. In the course of this cursory search, before they get into Pedro Franco's room, they'd already observed methamphetamine pipe, they'd observed two guns under the parents' bed, and I'm not exactly sure on the timing of this, but they did find more guns in the backyard, the area with the trees and the outbuildings. Again, where they testified it'd be definitely easy for people to hide. So part of our argument there was they could, and obviously eventually did get a search warrant, which is going to then take longer to serve. They want to make sure that that one room doesn't hold any surprises. Even if they're not ultimately going to be searching that room because of Claudio, they need to make sure there's no one there. And again, that's given this history with this family and with being lied to specifically about whether a brother was there. The family before had said, no, he was there. That presents a real risk to these officers. It seems like the area was already cleared, and if they see a locked room, they know it's not Claudio's room, why not go get a warrant at that point and hold guns to the door if they felt that compelled to? Well, again, because they're still processing. So they have looked at everything. They've done that cursory sweep. So the sweep had been completed. But for Pedro Franco's room, correct. But again, they've done the cursory part of the sweep, right, the looking for people. That's the only part of the sweep they get to do. As to the protective sweep. But again, to Claudio, they can search his area. No, I know, but along with it, it's a cursory search. And you just said that the cursory search had been completed, but they wanted to look at Pedro Franco's room. No, I'm sorry if that's ‑‑ Okay. What I'm saying is the cursory ‑‑ so they enter. Our argument is they legally can be there because of the fourth waiver. They do the protective sweep. They've seen during the course of that protective sweep other evidence that they're then going, not in Pedro Franco's room yet, that they're then going to need to do a more than cursory search for, right, the methamphetamine pipe, the guns. They've completed the sweep aspect of it, but for Pedro's room. So they're still going to be there for some time processing that evidence they've otherwise legally seen. Yes, sir. Yeah, counsel. Can you answer the question I asked your friend on the other side? What's the scope of Ninth Circuit precedent on a permissible protective sweep? Does it need to have those elements from Bowie like search incident to arrest? So it appears this court generally adopts the three factors that Bowie lays out. As to whether an arrest is required, there's actually an intracircuit, I don't know if split is the right word, but at least tension between a few cases. I would point this court to Lemus that discusses that and separates out search incident to arrest versus a protective sweep. And I'd point to also Kefauver, which is a court of appeals for the armed forces case, but it sets out the different circuits' positions, cites all of the different cases. Our argument would be that there's no reason to limit it to a search incident to arrest, and that's what the majority of courts have held because the analysis, the risk is the same whether someone's arrested or not. In fact, it's probably even greater risk if there hasn't been an arrest on the front end. Okay. Thanks. And finally, on the fourth waiver aspect, just to distinguish Laura. What were the facts? You just outlined the cases, I think. What were the facts of the case where the circuit extended a protective sweep where there was no arrest? I'm sorry, Your Honor, I don't remember off the top of my head. I just remember that there are. It seems like we'd be announcing a new rule here if we allowed a protective sweep doctrine to extend in circumstances where there was no arrest, based on my review. But I don't know if you had. Not off the top of my head, and I'm happy to send a 28-J letter about that. But this Court, at least in, again, I believe it was Lemus, has indicated that arrest was not required. And then finally, we would point that that argument has been waived anyway, but that aspect of it, I don't believe, was raised in the briefing or below, that an arrest as to the buoy factors, not the other three buoy factors. I see I'm out of time, so unless the Court has any further questions. Does anybody else have any other questions? No questions here. Thank you. Thank you. Yes, you may. I'll give you a minute. Your Honor, I'm looking and seeing, essentially, Rodello was the person who talked about the sweep, and he described it. He never described it. He said it was short but segmented and flowing, moving from area to area and surrounding the property. If you look at the record, the reported transport 44 to 45, ER 55 to 56, it lasted at least half an hour, ending with the search of the locked bedroom in the final stage. That's at RT 47, ER 58. So that's the length of it. I think there is language in Lara, which in Lara did find that it was because it was not a search incident, that was decisive and said it didn't apply. But, again, I know the government is arguing that I waived this. I have always raised the issue that this was an improper basis on buoy and that, in fact, it is not what was required by the Supreme Court. Thank you very much. Thank you both for your arguments and presentations here today. The case of the United States of America v. Federal, Aurelio Franco, is now submitted. Thank you very much.
judges: Gould, Murguia, Zouhary